UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

------------------------------------X
                             :

MARVIN ASNES TRUST, derivatively, on  :
Behalf of Hudson Foods, Inc.,        :
a Delaware Corporation,             :      Civil Action No.
                             :

             Plaintiff,      :      JURY TRIAL DEMANDED

      vs.                     :

JAMES T. HUDSON, MICHAEL T. HUDSON, :
CHARLES B. JURGENSMEYER, E.W. SHANNON,
JERRY L.  HITT, KENNETH N. MAY, JAMES
R. HUDSON, and JANE M. HELMICH,

            Defendants,     :

       -and-              :

HUDSON FOODS INC., a Delaware     :
Corporation,                :

       Nominal Defendant.    :
                             :
------------------------------------X

**97 8720**
**CIV-RYSKAMP**
MAGISTRATE JUDGE
VITUNAC

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

      Plaintiff Marvin Asnes Trust, by its attorneys, alleges
for its Verified Shareholder Derivative Complaint, upon personal
knowledge as to itself and its own acts the allegations set forth
in paragraph 4 and as to all other matters upon information and
belief based upon, _inter alia_, the investigation made by and
through its attorneys, as follows:

### PRELIMINARY STATEMENT

    1.   This shareholder's derivative action arises out of the
breaches by the Individual Defendants (defined below) of their

fiduciary duties as directors and officers of Hudson Foods, Inc. (hereinafter "Hudson Foods" or the "Company").  Hudson Foods sells a variety of chicken, turkey, pork and beef products and is the nation's third largest publically traded meat processing company. Hudson Foods supplies processed meat products to, among others, Wal-Mart, Burger King and Boston Market.  Wal-Mart accounted for 18.7% of the Company's total sales in 1996.  Burger King, and Boston Market, the Company's second and fourth largest customers, accounted for 5.7% and 4.4%, respectively, of total sales in 1996. With 1996 sales of $1.4 billion, Hudson Foods is ranked 791 out of the nation's top 1,000 companies by Fortune magazine and 29th among the top 35 food companies.

2.    Apart from being one of the largest poultry and beef processors, Hudson Foods also has the notorious distinction of setting records for the two largest food recalls in U.S. history, recalling in 1995 and again in August of 1997 a combined total of over 28 million pounds of beef and poultry products.  As a result of their breaches of the fiduciary duty of due care, the Individual Defendants failed to take steps to impose adequate quality control standards and procedures, failed to properly investigate persistent problems relating to quality control when such problems became known, failed to implement a system of record keeping which would have prevented the diminished quality which eventually led to the massive recalls and continuously and systematically engaged in

2

breaches of compliance with food and safety rules and regulations. As a result of the Individual Defendants' continuous, willful and/or reckless breach of their fiduciary duties, the Company has been exposed to and continues to be exposed to substantial economic loss.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and is between citizens of different states.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because offices of the Company are within this District and many of the acts alleged and complained of herein occurred in this District.

## THE PARTIES

4.    Plaintiff Marvin Asnes Trust ("Plaintiff") presently holds, and at all times relevant herein held, shares of Hudson Foods, Inc., common stock and brings this action derivatively on behalf of Hudson Foods and its shareholders.   Plaintiff is a resident of Florida.

5.    Hudson Foods is a Delaware corporation and has its principal executive offices at 1225 Hudson Road, Rogers, Arkansas, 72756.   Hudson Foods is the nation's third largest publically traded meat processing company and sells a variety of chicken, turkey, pork and beef products.

3

6.    Defendant James T. Hudson ("Hudson") was, at all relevant times herein, Chairman of the Board and Chief Executive Officer of the Company.  Before founding Hudson Foods in 1972, Hudson was an executive of Ralston Purina.  He was also the Chairman of the National Broiler Council and President of the Arkansas Poultry Foundation.   Given his positions with the Company, employment history and memberships in professional organizations, Hudson knew about all aspects of the Company's food processing testing and quality assurance procedures and all applicable industry and regulatory testing rules and regulations.  Hudson owns 99.9% of the Company's Class B Stock and 32.1% of its Class A Stock and is thus a "control person" according to the Company's 1997 Proxy Statement. As such, Hudson controls the business of the Company and its Board.

7.    Defendant Michael T. Hudson ("M. Hudson"), one of Hudson's children, was at all relevant times President, Chief Operating Officer, and a director of the Company.  M. Hudson also served as a Vice-President of production and, prior to joining the Company, was employed by Ralston Purina in its poultry operations department. Given his positions with the Company and employment history, M. Hudson knew about all aspects of the Company's food processing testing and quality assurance procedures and all applicable industry and regulatory testing rules and regulations. M. Hudson is the second highest paid executive officer of the Company earning over $900,000 in fiscal 1996.  In addition, M.

4

Hudson is the owner of a farm which received $141,000 from the Company in fiscal 1996 pursuant to certain grower contracts.  M. Hudson is also a member of the Compensation Committee of the Board, along with Hudson and defendant Charles B. Jurensmeyer.  The Compensation Committee, among others things, establishes compensation for all of the Company's executive officers.

8.  Defendant James R. Hudson ("J. Hudson") one of Hudson's children, was at all relevant times herein, a director of Hudson Foods.  J. Hudson is the fourth highest paid executive officer of the Company and earned over $330,000 in fiscal 1996.

9.  Defendant Jane M. Helmich ("Helmich"), one of Hudson's children, was at all relevant times herein a director of Hudson Foods. Helmich's husband, Larry E. Helmich, a former Company director, is an employee of the Company and received a salary and bonus for fiscal 1996 totaling more than $390,000.  In addition, Larry Helmich is a joint-owner of a farm with J. Hudson which received $121,000 in fiscal 1996 pursuant to a grower contract with the Company.

10.  Defendant Charles B. Jurgensmeyer ("Jurgensmeyer") was at all relevant times, Chief Financial Officer, Executive Vice President and a director of the Company.  Jurgensmeyer is the third highest paid executive officer of the Company and earned over $750,000 in fiscal 1996.

5

11.   Defendant Kenneth N. May ("May") was, at all relevant times herein a director of Hudson Foods.  May is a consultant for the Company.  May retired from Holly Farms Foods, Inc., where he acted for twelve years as the Vice-President of Research and Quality Assurance, three years as President and Chief Executive Officer and one year as Chairman and Chief Executive Officer. Given his positions with the Company and employment history, May knew about all aspects of the Company's food processing testing and quality assurance procedures and all applicable industry and regulatory testing rules and regulations.

12.   Defendant E.W. Shannon ("Shannon") was, at all relevant times herein a Director of Hudson Foods.  Shannon began service with the Company in 1972 as Marketing Manager.  He retired in April 1984 as Vice President and Director of Marketing.  He was subsequently retained by the Company as a consultant.

13.   Defendant Jerry L. Hitt ("Hitt") was, at all relevant times herein a Director of Hudson Foods.

14.   The individuals named as defendants above are collectively referred to hereafter as the "Individual Defendants."

15.   By reason of their positions and because of their ability to control the business and corporate affairs of Hudson Foods at all times relevant herein, the Individual Defendants, as directors and/or officers of Hudson Foods, owed Hudson Foods and its shareholders fiduciary obligations of due care and were and are

6

required to use their utmost ability to control Hudson Foods in a fair, just and equitable manner, and to act in furtherance of the best interests of Hudson Foods and its shareholders. As set forth below, the Individual Defendants are liable to Hudson Foods for breach of their fiduciary duties to Hudson Foods and its shareholders through their intentional and/or reckless management that allowed Hudson Foods and its employees to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants is liable as a direct participant in, and aider and abetter of, the wrongs complained of herein.

16. Each of the Individual Defendants breached their fiduciary duties to Hudson Foods by, _inter alia_: (a) deciding to rapidly expand the Company's beef processing business while causing Hudson Foods to fail to impose adequate quality control standards to meet increased production; (b) failing to adequately investigate such quality control standards when such quality problems were persistent, chronic and previously disclosed; (c) utilizing an inadequate system of record keeping which allowed for the routine practice of returning unused, tainted and potentially deadly, raw material into the next day's production; and (d) systemically engaging in breaches of compliance with food safety rules and regulations. As a result of its deliberate and/or reckless disregard for laws and regulations governing safety, and in failing to ensure that the Company had in place an adequate and effective

7

system of quality control, the Company was exposed to substantial harm to its business and reputation, and suffered and will continue to suffer extreme economic losses.

**DERIVATIVE ALLEGATIONS**

17. Plaintiff brings this action derivatively pursuant to Rule 23.1 of the Federal Rules of Civil Procedure on behalf of and for the benefit of Hudson Foods to remedy the wrongdoing alleged herein.

18. Plaintiff will fairly and adequately represent the interests of Hudson Foods in enforcing and prosecuting the rights of Hudson Foods and has retained competent counsel, experienced in derivative litigation of this nature to prosecute this action.

19. Plaintiff brings this action to remedy violations of state common law.

20. As directors of a Delaware corporation, the Individual Defendants were charged with performing their duties in good faith and with the degree of care which an ordinarily prudent person serving as a director of a company principally involved in the processing of meat products for human consumption would use under similar circumstances. Moreover, the Individual Defendants are charged with a fiduciary duty of loyalty to the corporation. In conducting the affairs of the Company, the Individual Defendants must exercise independent judgments free from personal and/or selfish influences and motives.

8

21.    The  Individual  Defendants  must  reasonably  inform themselves  before  making  business  judgments  about  Hudson  Foods' business.   The Individual Defendants are all charged with a duty of reasonable  inquiry  and  cannot  exempt  themselves  from  liability  by failing  to  do  more  than  passively  rubber-stamp  the  decisions  of Hudson Foods' managers.

22.    In accordance with their fiduciary duties, the Individual Defendants  were  responsible  for  assuring  themselves  that  Hudson Foods  had  information  and  reporting  systems  reasonably  designed  to provide  the  Board  with  timely,  accurate  information  sufficient  to allow  it  to  reach  informed  decisions  concerning  both  Hudson  Foods' compliance  with  the  law  and  its  business  performance.    Thus,  the Individual  Defendants  had  to  ensure  that  Hudson  Foods  established adequate  systems  over  its  meat  processing  operations  to  ensure  the Company  was  complying  with  corporate  inspection  policies  and industry and regulatory guidelines.  The Individual Defendants were also  required  to  actively  inquire  and  investigate  so  as  to reasonably  assure  themselves  that  Hudson  Foods  had  implemented  and was adhering to an adequate meat inspection control system.

## DEMAND IS FUTILE

23.   Plaintiff  incorporates  by  reference  and  realleges  each and  every  allegation  stated  in  paragraphs  1  through  22  above  as  if fully  set  forth  herein.  Plaintiff  did  not  make  a  demand  on  the

9

Board to bring this action because such demand would be futile and therefore such a demand is excused.

24. As specified herein, the Individual Defendants were aware of critical facts regarding Hudson Food's business in processing meat products, namely:

a. Certain strains of E. coli and other forms of bacteria can cause serious injuries and even death in humans;

b. E. coli bacteria contamination is a common problem in the meat processing industry;

c. Mere public perception that a company is selling meat tainted by E. coli or other bacteria can have devastating effects on profits and shareholder value;

d. Hudson Foods had adopted an aggressive campaign to increase the volume of its meat processing business to satisfy burgeoning demand from large scale retailers like Wal-Mart and restaurant chains like Burger King and Boston Market;

e. Meat processing is a highly regulated industry subject to numerous federal rules and regulations and inspection requirements imposed by the Federal Food and Drug Administration and the United States Department of Agriculture;

f. Hudson Foods' inspection procedures over its meat processing operations were totally inadequate to keep up with its booming and expanding business;

10

g.   Hudson Foods had failed to take remedial measures after warnings about the inadequacy of its meat inspection controls were sounded in a huge recall of its turkey production in 1995, concerns about possible bacterial contamination in ground hamburger raised by its major customer, Burger King, and a recent OSHA fine assessed against Hudson Foods for placing its "workers at risk of death or serious injury by ignoring good safety and health practices."

25.  Despite their knowledge of these facts, the Individual Defendants oversaw Hudson Food's rapid and aggressive expansion of its meat processing business without adopting adequate systems to reasonably ensure that the Company was not selling products tainted by deadly strains of E. coli and/or other harmful bacteria.

26.  Accordingly, demand is excused because this Complaint alleges particular facts which raise a reasonable doubt that the Board's decisions with respect to the Company's expansion plans were not the product of informed business judgment.  In addition, given their specific knowledge and decisions to ignore warnings, a majority of the Board face a substantial likelihood of liability in connection with their intentional and/or reckless abdication and dereliction of their fiduciary duties to ensure that Hudson Foods had adequate meat inspection controls over food processing business.

11

27. In addition, demand is excused because the Complaint alleges specific facts which create a reasonable doubt that a majority of the Board can exercise independent, disinterested judgments with respect to the decision of considering a demand. Hudson, a primary wrongdoer, owns the largest single amount of Hudson Food's stock and thus, according the Hudson Food's 1997 Proxy Statement, is a "control person." Five of the other Individual Defendants, M. Hudson, J. Hudson, Helmich, Jurgensmeyer and May are all dominated and controlled by Hudson due to their business and familial ties to Hudson and their dependence on him for substantial revenues.

28. Defendants M. Hudson, J. Hudson and Helmich are Hudson's children. In addition, M. Hudson and J. Hudson are respectively, the second and fourth highest paid executives of Hudson Foods. Helmich's husband is also a highly paid employee of Hudson Foods and receives additional revenues, as does M. Hudson and J. Hudson, from lucrative grower contracts with Hudson Foods.

29. Defendant Jurgensmeyer is Hudson Food's Chief Financial Officer and is the third highest paid executive officer other than Hudson, earning three-quarters of a million dollars in compensation in 1996 alone. In addition, Jurgensmeyer, along with Hudson and M. Hudson, is a member of Hudson Food's Compensation Committee which has the responsibility for, among other things, establishing their own level of compensation. Defendants May and Shannon, former

12

long-time Hudson Foods executive officers, have lucrative
consulting contracts with the Company.

## SUBSTANTIVE ALLEGATIONS

30. Hudson Foods is a fully integrated producer and marketer
of meat products. In recent years, the Individual Defendants
endorsed an aggressive business strategy to increase the Company's
production and sale of processed meats to large customers like Wal-
Mart and food service chains like Burger King and Boston Market.
Pursuant to that strategy, in 1995, the Company completed a beef
processing plant in Columbus, Nebraska. Although the plant was
originally designed to produce hamburger patties for Burger King,
due to the success of the Company's expansion campaign, the plant
was subsequently expanded to allow for additional capacity to serve
other customers.

31. The Company's rapid expansion into processing beef
products proved hugely successful. Net sales of beef products
nearly tripled from September 1995 through September 1996 and the
percentage of total sales more than doubled.

32. Hudson Foods has purchased all of its beef and pork raw
materials from outside sources, entailing slaughtering, handling
and packaging procedures and practices outside of the Company's
control. As detailed above, the Individual Defendants, based upon
their training, experience and/or membership in professional and
trade associations and organizations, knew of the material health

13

risks human pathogens such as E. coli can constitute to the general public, especially to the young, old and the infirm. They likewise knew that the occurrence of the presence and spread of such pathogens as E. coli is a common problem in food and, especially, meat processing plants. They further knew, based upon the deadly nature of these pathogens and the substantial interest and concern press about past outbreaks of these pathogens -- especially E. coli -- in foods have caused in the general public, that the mere perception that a company was selling foods tainted by E. coli or other such harmful bacteria could have a material and devastating impact on the company's profits and even continued existence.

### The Company's History of Problems

33.  In 1995, Hudson Foods was responsible for the nation's largest meat recall then to date. The 1995 recall accounted for about 3 million pounds of Hudson Foods Delightful Farms Finely Ground turkey, which were recalled because of contamination with tiny shards of bone. Over the course of this recall, the Company consistently understated estimates of how much meat was actually tainted, and were required to repeatedly "revise" these estimates upward over a number of days from the initial Company estimate of about a million pounds to well over three million pounds by the recall's end.

34.  Hudson Foods' corporate philosophy, which hangs in the office of every manager in the Company, says:

14

> We strive to be a company whose worth in dollars is determined by its emphasis on human values, rather than a company whose human values is determined by its emphasis on dollars.

Yet, in spite of this statement of corporate determination, on July 22, 1997, Hudson Foods was fined $332,500 by the Occupational Safety and Health Administration ("OSHA") for repeated violations of worker safety rules.  OSHA cited the Company for "willful, serious and repeated violations of requirements for worker safety." Labor Secretary Alexis M. Herman stated that: "We cannot allow employers to continuously place their employees at risk of death or serious injury by ignoring good safety and health practices."

35.  On August 13, 1997, Hudson Foods announced a voluntary recall of frozen ground beef patties.  According to the Company, the voluntary recall was for approximately 20,000 pounds of frozen ground beef patties due to possible E. coli O157H7 bacteria[1] contamination. The Company claimed that the only products affected were those marked with the code numbers 156A7, 156B7 and 155B7. The ground beef in question represented a portion of three days production, from a single plant in early June.  By this time, sixteen people were known to have become ill from the Hudson Foods burgers.

---

[1]    E. coli O157H7 is a potentially deadly bacteria that can cause severe abdominal cramps, bloody diarrhea, and dehydration. The very young, the elderly and persons with compromised immune systems are most susceptible to this food borne illness.

15

36. On August 15, 1997, the U.S. Department of Agriculture ("USDA") announced that the size of the Hudson Foods ground beef recall was grossly underestimated by the Company. The USDA announced that over 1.2 million pounds of ground beef were being recalled due to possible E. coli contamination. Additionally, the USDA stated that there could be additional product codes involved in the Hudson Foods recall. In response to the recall, Agriculture Secretary Dan Glickman ("Glickman") stated that he was concerned about the Company's history, and was escalating his investigation of Hudson Foods. Glickman also said he was bothered by the Company's initial underestimation of how much beef was involved and the Company's status as the "national record holder for meat recalls." Glickman commented that, "Obviously, it causes me great concern that the same company is responsible for the two largest call backs."

37. On August 18, 1997, Hudson Foods responded to the allegations that it willfully and deliberately under-reported the actual size of the beef recall. The Company contended that it did not underestimate the recall, but that it had "focused on accurately reporting the lot codes and did not focus on the poundage figure." It is incomprehensible that the Company did not know that the lot codes at issue represented 1.2 million pounds as opposed to 20,000 pounds of meat product.

16

38.  On August 21, 1997, Hudson Foods announced that it would close indefinitely the Columbus, Nebraska ground beef plant. At the same time the Company announced that it was expanding the recall to include all ground beef products that were produced in the plant, and which bear the plant code #13569.

39.  While the Company called this a voluntary act, the New York Times, on August 22, 1997, reported that the actions were taken under implicit threat from the Department of Agriculture that unless processing and administrative problems at the plant were corrected, the Department would force the plant to close by withdrawing inspectors who insure food safety. The recall was now expanded to cover up to approximately 25 million pounds of ground beef. While the Company did not announce a re-opening date for the plant, the Company did say that it planned to continue paying all 230 employees of the plant full pay, until a further decision was made by the Company. The cause of the contamination was also uncovered. Glickman stated at a news conference that evidence was uncovered that showed that hamburger patties left over from production on June 5, 1997 showed evidence of the potentially deadly bacteria, E. coli O157:H7, but were added to production the next day. As a result, the company could not guarantee that any meat produced subsequently would be free of the bacteria.

40.  Thomas J. Billy ("Billy"), the administrator for the Food Safety and Inspection Service, an arm of the USDA, said that as

17

Federal Investigators looked deeper into plant operations they found that Hudson Foods had "weak quality control standards, an inadequate system of record keeping and a routine practice of returning unused raw material into the next days production." Billy stated that while the plant had "some sort of hazard plan," he was "unaware their science has been validated and [he was] unaware that Hudson [was] following the plan on a day-to-day basis."  Finally Billy said:

> Investigators had been alarmed by inadequacies in the plant's record-keeping, which obscured levels of production for any given day.

Billy also questioned plant management's sincerity in dealing with the contaminated product because "Federal investigators prompted the wider recall last week and not the Company."  Indeed, as the New York Times reported on August 27, 1997, the Company's testing procedures were "clearly insufficient" given the huge volume of meat produced at the Nebraska plant.

41.  On August 22, 1997, Burger King, Hudson Foods biggest customer of ground beef originating from its Columbus, Nebraska plant, announced that it had voluntarily recalled all beef products sold to it by Hudson Foods.  The following day, Burger King announced that it would no longer purchase ground beef from Hudson Foods.  On August 24, Boston Market also announced it was considering dumping Hudson Foods as a supplier.

18

42.   On August 26, 1997, Hudson Foods announced that it would try to sell its beef-processing plant in Columbus, Nebraska.   The Company disclosed that without its biggest customer, Burger King, which had accounted for over half of the plant's sales, the plant could not be operated profitably.   Hudson Foods had built the state-of-the-art plant only four years ago at a cost of $37 million.   The Company did not disclose what the plant could be sold for following its contamination.

## COUNT I
### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACHES OF THEIR FIDUCIARY DUTIES
### OF DUE CARE AND LOYALTY

43.   Based upon the allegation set forth in paragraphs 1 through 42 above, the Individual Defendants intentionally breached and/or recklessly disregarded their fiduciary duties to Hudson Foods.

44.   The Individual Defendants abused the power and control reposited in them by virtue of their directional positions at Hudson Foods by: (a) causing Hudson Foods to fail to impose adequate quality control standards; (b) failing to adequately investigate and improve such quality control standards when quality problems were previously revealed; (c) utilizing an inadequate system of record keeping which allowed for the routine practice of, inter alia, returning unused and potentially tainted and dangerous left over meat into the next day's production; and (d) systematically engaging in breaches of compliance with food safety rules and regulations.   As a result of its deliberate and/or reckless disregard for laws and regulations governing safety, and

19

in failing to ensure that the Company had in place a system of quality control, the Company was exposed to substantial harm to its business and reputation.

45. Hudson Foods and its shareholders have been injured by reason of the Individual Defendants' breach of their fiduciary duties to Hudson Foods. Plaintiff, as a shareholder and representative of Hudson Foods, seeks appropriate relief for Hudson Foods as hereinafter set forth.

**COUNT II**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR INDEMNIFICATION**

46. Based upon the allegation set forth in paragraphs 1 through 45 above, the Individual Defendants acting as directors and/or officers, and therefore agents, of Hudson Foods acted disloyally in intentionally breaching and/or recklessly disregarding their fiduciary duties to Hudson Foods.

47. Hudson Foods and its shareholders have been injured by reason of the Individual Defendants' breaches of their fiduciary duties to Hudson Foods. Plaintiff, as a shareholder and representative of Hudson foods, seeks restitutional damages and other relief from the Individual Defendants on the theory of indemnity to the extent that Hudson Foods is found liable for any of the Individual Defendants' violations of federal law or state common law.

**WHEREFORE,** Plaintiff demands judgment on behalf of Hudson Foods against the Individual Defendants as follows:

20

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.


**DATED:**        Sepetember 12, 1997   .

Hugo L. Black, Jr. (#006310)
Joseph W. Beasley (#172074)
Bonnie J. Losak-Jimenez (#366161)
KELLY, BLACK, BLACK, BYRNE
    & BEASLEY, P.A.
169 East Flagler Street
1400 Alfred I. duPont Bldg.
Miami, Florida 33131-1231
Telephone: (305) 358-5700
Telefax:   (305) 358-7269
Local Counsel


MORRIS and MORRIS
1105 North Market Street
Suite 1600
Wilmington, DE 19801
(302) 426-0400

STULL STULL & BRODY
6 East 45th Street
New York, NY 10017
(212) 687-7230

WEISS & YOURMAN
551 5th Avenue
Room 1600
New York, NY 10176
(212) 682-3025

Attorneys for Plaintiff


#3857\HLBJr\adsj
J:\WORK\ASJ\JWB\PLEAD\HUDSON.CMP


22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

```
----------------------------------X
                                  :
MARVIN ASNES TRUST, derivatively, on  :
Behalf of Hudson Foods, Inc.,     :
a Delaware Corporation,           :     Civil Action No.
                                  :
              Plaintiff,          :
                                  :
      vs.                         :     AFFIRMATION
                                  :
JAMES T. HUDSON, MICHAEL T. HUDSON,  :
CHARLES B. JURGENSMEYER, E.W. SHANNON,:
JERRY L.  HITT, KENNETH N. MAY, JAMES :
R. HUDSON, and JANE M. HELMICH,   :
                                  :
              Defendants,         :
                                  :
         -and-                    :
                                  :
HUDSON FOODS INC., a Delaware     :
Corporation,                      :
                                  :
           Nominal Defendant.     :
                                  :
----------------------------------X
STATE OF FLORIDA          :
                          : ss.
COUNTY OF PALM BEACH      :
```

I, Marvin Asnes, attest and affirm the following:

1.   I am the trustee for Marvin Asnes Trust, plaintiff in the above captioned matter.  As such, I have the authority to make all decisions and to act on behalf of the Trust concerning its ownership of Hudson Foods, Inc. common stock.

2.   I have read the foregoing complaint and hereby verify that the contents thereof are true to my own knowledge, except as to matters therein stated to be alleged on information and belief, which matters I believe to be true.  I affirm this to be true under penalty of perjury.

Dated:  September 7, 1997

_Marvin Asnes_
MARVIN ASNES

# CIVIL COVER SHEET

97 8720
CIV MAGISTRATE
HURLEY

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS** MARVIN ASNES TRUST, derivatively, on Behalf of Hudson Foods, Inc., a Delaware Corporation

**DEFENDANTS** JAMES M. HUDSON, MICHAEL T. HUDSON, CHARLES B. JURGENSMEYER, E.W. SHANNON, JERRY L. HITT, KENNETH N. MAY, JAMES R. HUDSON, AND JANE M. HELMICH
and HUDSON FOODS, INC., a Delaware Corporation, Nominal Defendant

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

Palm Beach 97CV8720/KLR/AEV

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
SEE ATTACHED

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, (PALM BEACH,) MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C.A. 1332 Stockholders Derivative Action

IVa. 14 days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | **A PROPERTY RIGHTS** | ☐B 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐B 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐B 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐B 371 Truth in Lending | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐B 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐B 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus** | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐B 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | *A or B |
| | | ☐B 791 Empl. Ret. Inc. Security Act | | Appeal to District |

**A LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐B 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation

**A FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R R & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Refiled | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
✓ CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23     23.1

**DEMAND $**
In excess of $75,000

Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE 9/12/97

SIGNATURE OF ATTORNEY OF RECORD

**UNITED STATES DISTRICT COURT**
S/F I-2
REV. 6/90

FOR OFFICE USE ONLY:  Receipt No. 68512  Amount: 150 00
Date Paid: 09/12/97  M/ifp: _____

HUGO L. BLACK, JR., ESQ.
JOSEPH W. BEASLEY, ESQ.
KELLY, BLACK, BLACK, BYRNE & BEASLEY, P.A.
169 East Flagler Street
1400 Alfred I. duPont Building
Miami, Florida 33131
305-358-5700
305-358-7269-Facsimile

MORRIS and MORRIS
1105 North Market Street
Suite 1600
Wilmington, Delaware 19801
302-426-0400

STULL STULL & BRODY
6 East 45th Stret
New York, New York 10017
212-687-7230